IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


GLEN GRACE, # 312989                          *
                    Plaintiff,
        v.                                    *       CIVIL ACTION NO. RDB-06-2551

LINDA TRISCH                                  *
                    Defendant.
                                              *

**MEMORANDUM  OPINIION**

Pending is a *pro se* 42 U.S.C. § 1983 complaint filed by Glen Grace, an inmate at the

Maryland Correctional Training Center (MCTC), alleging denial of adequate medical treatment.

Counsel for Defendant Linda Trisch, R.N.,  Nurse Manager for Correctional Medical Services, Inc.,

the contractual health care provider for the Maryland Correctional Training Center, has filed a

motion to dismiss, or in the alternative, for summary judgment and verified exhibits.[1]

Defendant relies on materials beyond the scope of the Complaint, and the Motion shall be

construed as one for summary judgment pursuant to Fed R. Civ. P. 56.  No hearing is necessary. *See*

Local Rule 105.6 (D.Md.).  For the reasons set forth below, the Court will grant the Motion for

Summary Judgment.

**I. Background**

Plaintiff filed this action on September 29, 2006, claiming he has been denied adequate

treatment for glaucoma.[2]  Additionally, he alleged that Defendant is preventing him from attending

ophthalmologist appointments.  As relief,  Plaintiff asks to see an "eye doctor" and receive

---

[1]       Plaintiff was provided notice pursuant to  *Roseboro v. Garrison,* 528 F.2d 309 (4th
Cir. 1975), but has not filed a response.

[2]       Glaucoma refers to a group of disorders that result in damage to the optic nerve,
usually due to increased pressure in the eye, and can lead to blindness.  Primary Open Angle
Glaucoma (POAG) is the most common form.  Affidavit of Sadik Ali, MD,  Ex. A, p. 2, n. 1

medication and treatment.  In addition to injunctive relief, Grace also seeks monetary sanctions

against Defendant, who he claims has prevented him from attending medical appointments.

Complaint.

On October 10, 2006, the Court issued an Order to Show Cause requiring the Office of the

Attorney General of Maryland to respond to the serious questions raised in the Complaint

concerning Grace's health.  Upon review of the State's response and verified exhibits, the Court

denied emergency injunctive relief, directed counsel for Correctional Medical Services to file an

Answer, and granted Grace thirty days to amend the Complaint. Papers 6 & 7.  The Court also

directed the Office of the Attorney General to file a status report.[3]   Grace did not amend the

Complaint.

## II.  Facts

Defendant's verified and undisputed exhibits show that Grace is a 57-year old male with a

history of Primary Open Angle Glaucoma (POAG), diabetes, and coronary heart disease. Affidavit

of Sadik Ali, MD[4],  Ex. A, ¶ 3.  Since 2003, Grace has been treated at the University of Maryland

Medical Center for his eye condition.  Ex. A, ¶ 4.  Ophthalmologists have prescribed for Grace eye

drops that are known to benefit POAG patients including Cosopt, Alphagan P, Xalatan, Pred Forte,

Maxitrol ointment, and atropine. Ex. A, ¶ 5.  Grace is  receiving his eye medications at MCTC. *See*

*id.*, Ex. C pp. 2-22, 25.

Grace has also had several surgical procedures for his POAG.  On December 10, 2003, and

---

[3]     The status report was filed on November 14, 2006.  Paper No. 9.

[4]     Dr. Ali is the Medical Director for Correctional Medical Services, Inc., at MCTC.

January 10, 2005, a trabeculectomy was performed on his right eye.[5]  On May 11, 2005, Grace

underwent aragon laser trabeculoplastly on his left eye.[6] Ex. A, ¶ 6; Ex. C pp. 3, 12, 15.  Grace has

two other conditions that my be affecting his vision: 1) a developing cataract in his right eye; and

2) mild non-proliferative diabetic retinopathy. [7] Ex. A, ¶ 7; Ex. C 8, 18.   On occasion, Grace has

been non-compliant with using his eye drops.  He has also "signed off" [8] on several ophthalmologist

appointments.  Ex. A, ¶ 8; Ex. C pp 22, 24.

Grace was examined by a  University of Maryland Medical Center ophthalmologist on

March 3, 2006, and diagnosed with advanced glaucoma in the left eye and elevated intraocular

pressure (IOP).  The ophthalmologist questioned Grace's compliance with his treatment regimen.

The ophthalmologist noted end-stage glaucoma in the right eye.  Ex. A, ¶ 9; Ex. C pp.  22-24.

Grace was scheduled for a follow-up ophthalmologist appointment within two weeks of July

24, 2006.  Affidavit of Linda Trisch, RN, Ex. B, ¶ 3, Ex. E, p 23.  According to Trisch, the medical

records supervisor informed her that the scheduler was unable to secure an appointment at

University of Maryland Medical Center until November of 2006. Ex. B, ¶ 3.  In her affidavit, Trisch

states:

> I have never told Grace that he would not be followed by the

---

[5]     In a trabeculectomy, a small opening is created in the sclera to allow fluid to drain out of the eye. Ex. A, p. 3, n. 2.

[6]     In this procedure, the surgeon uses a laser to increase fluid drainage from the trabecular meshwork, the base of the iris.  Ex. A, p. 3, n. 3.

[7]     Diabetic retinopathy is damage to the retinal blood vessels.  Non-proliferative diabetic retinopathy is an early stage of retinopathy in which the retinal blood vessels leak blood or fluid. Ex. A, p. 3,  n. 4.

[8]     "Signed off" indicates that an inmate has refused to do something, such as refused physical therapy or to take medications. Ex. A, p. 3,  n. 5.

3

ophthalmologist.  I have no control over approval of Grace's off-site ophthalmology appointments, and I am not responsible for scheduling those appointments. The approval of such appointments are done by the on-site physicians and Wexford Health, which is the utilization review company for the Department of Public Safety and Correctional Services, and the scheduling is done by the medical records supervisor.

At times, I have conferred with the physician, and checked Grace's medical records, to make sure Grace was scheduled for his follow-up appointments.  I, however, have not spoken to or received any type of correspondence from Grace in several months

Ex. B, ¶¶ 5-6.

On October 13, 2006, Sadik Ali, MD, evaluated Grace. He prescribed insulin twice a day, in additional to his oral diabetic medication, to better control his diabetes and prevent advancement of his retinopathy. Ex. C. p 26.  According to Ali, Grace has refused his morning dose of insulin on many occasions. Ex. C, pp. 27, 33-34, 38-56.

On October 27, 2006, Grace informed Nurse Trisch that he had run out of his prescription eye drops.  Trisch obtained a refill of the eye drops, but states Grace is not using them consistently, based on his Medical Administration Records.  "If Grace were using them as ordered, he would need to obtain more than one or two bottles of eye drops per month."  Ex. B, ¶ 4, Ex. E, pp. 28, 36, 57-67.

On November 29, 2006, Grace was examined in the Ophthalmology Clinic at the University of Maryland Medical Center.  The examining ophthalmologist found Grace's IOP well-controlled, but the glaucoma was progressing.  The ophthalmologist noted: 1) Grace has advanced glaucoma, greater in the right eye than the left; 2) Grace has a cataract in his right eye; and 3) Grace's vision might be improved by cataract surgery and reading glasses.  Ex. A, ¶ 12.  The ophthalmologist recommended that Grace return to the clinic in one month to reassess the cataract and glaucoma. He also recommended that Grace continue his current treatment. *See id.* According to Dr. Ali, he

has since ordered reading glasses for Grace and filed the consultation request form required for

Grace to return for his ophthalmology reevaluation. Ex. A, ¶ 12, Ex. C pp. 29-32, 35.

### III.  Standard of Review

Fed. R. Civ. P. 56(c) provides :

> [Summary judgment] shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d

514, 525 (4ᵗʰ Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e).  The court should

"view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her

favor without weighing the evidence or assessing the witness' credibility."  *Dennis v. Columbia*

*Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4ᵗʰ Cir. 2002).  The Court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4ᵗʰ Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986)).

## IV. Analysis

In order to state an Eighth Amendment claim for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

In this case, the record demonstrates that Grace has been regularly monitored by medical practitioners, including ophthalmologists, and provided medical treatment and medication appropriate for his glaucoma. The record does not suggest deliberate indifference to Grace's serious ocular conditions, but rather demonstrates continuing efforts to address his medical concerns. To the extent Grace seeks injunctive relief to see an "eye doctor" and receive medication and treatment, he has and continues to receive the relief he has requested.

There is no basis presented here to find that Grace has received inadequate care or has been deprived of medical treatment amounting to a constitutional violation. After reviewing the pleadings, affidavits, and other exhibits, the Court concludes that Plaintiff does not proffer any evidence, other than his own unsupported allegations that Trisch prevented him from receiving medication/treatment or that her conduct amounted to deliberate indifference to his medical needs. Accordingly, the Court will grant Defendant's Motion for Summary Judgment, and enter a separate Order consistent with this Memorandum Opinion.

January 17, 2007                          /s/
DATE                                           RICHARD D. BENNETT
                                               UNITED STATES DISTRICT JUDGE

7